JOHN P. FOSS, Appellant, *vs.* THE PEOPLE'S GAS LIGHT AND COKE COMPANY, Appellee.

*Opinion filed June 16, 1909—Rehearing denied October 14, 1909.*

1. PLEADING—*what is sufficient averment of complainant's relation as stockholder.* In a bill by a stockholder against a corporation for accounting and relief, an averment that "in or about 1857 the complainant became, ever since has been and now is a stockholder" of defendant corporation "and the owner of 1500 shares, of the par value of $50 each, of the original capital stock of said defendant corporation," is a sufficient statement of complainant's relationship as a stockholder to require the defendant to answer.

2. SAME—*averments of cross-bill not considered in determining sufficiency of original bill.* In determining the sufficiency of an original bill, facts stated only in a cross-bill filed by a party made a defendant on his intervening petition cannot be considered, since to so bring extraneous facts into view would be, in effect, to recognize a speaking demurrer, which is never allowable.

3. SAME—*what averments in bill show laches.* An averment in a bill to the effect that the complainant, "before the commencement of this suit," made demands upon the defendant corporation for an accounting and for an opportunity, as a stockholder, to examine its books, shows *laches* on its face, where the bill also shows that the complainant has been a stockholder of the corporation for nearly fifty years, during which time his rights have been denied.

4. LACHES—*when delay in making demand will bar relief.* If a demand upon a corporation by a stockholder is a necessary condition precedent to his right to bring suit, unreasonable delay in making demand is as much a bar as delay in beginning suit, and, if unexplained, his right to relief will be as effectually barred in the one case as in the other.

5. SAME—*stockholder must use due diligence in seeking relief against corporation.* A stockholder must act with due diligence in seeking relief against a corporation for acts and omissions of such a character as would naturally be within his knowledge, and his unreasonable and unexplained delay will bar his rights, notwithstanding the trust relation existing between a corporation and its stockholders.

6. AMENDMENTS—*matter of amendments in chancery is largely within chancellor's discretion.* The matter of allowing amendments in chancery proceedings is largely within the discretion of the trial court, and the Supreme Court will not reverse for refusal of leave to amend unless there has been an abuse of such discretion.

7. APPEALS AND ERRORS—*when it is not error to dismiss bill.* If a bill, as amended after demurrer, is so defective as to show that the complainant has no cause for equitable relief, it is not error to sustain a demurrer to such amended bill, deny leave to make further amendments and dismiss the bill.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

KNIGHT, BARBOUR & ADAMS, FRANCIS W. WALKER, ROBERT F. PETTIBONE, and FRED H. RAYMOND, (H. S. & F. S. OSBORNE, and ALBERT G. WELCH, of counsel,) for appellant.

SEARS, MEAGHER & WHITNEY, (JAMES F. MEAGHER, and JESSE J. RICKS, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

John P. Foss filed a bill in the circuit court of Cook county against the People's Gas Light and Coke Company, to which a general demurrer was interposed and sustained. Afterwards Foss filed an amended bill, to which a general demurrer was sustained, the complainant's application to further amend his bill denied and the bill dismissed. The decree dismissing the bill for want of equity having been affirmed by the Appellate Court for the First District, by his further appeal Foss has brought the record to this court for review.

Only two questions are presented for our consideration: First, did the court err in sustaining the demurrer to the amended bill? Second, if the bill was defective, did the court err in denying the appellant's application for leave to amend?

The amended bill states that the defendant gas company is an Illinois corporation, organized under a special act of the legislature approved February 12, 1855, and amended

in 1865; that said gas company is engaged in the manufacture and sale of gas for illuminating and other purposes in the city of Chicago; that said company has since 1865 been extensively engaged in the manufacture and sale of gas, from which large revenues and profits have been derived which by right ought to have been distributed to the stockholders; that about the year 1887 the gas company, by merger or consolidation, acquired the property and franchises of the Illinois Light, Heat and Power Company, and that subsequently, between 1887 and 1899, a number of other gas companies were merged into or consolidated with the appellee company; that appellee, as such consolidated company, has been engaged in the manufacture and sale of gas in the city of Chicago, and elsewhere in Cook county, all the time since the mergers or consolidations occurred, and that from such business the company has derived large profits and incomes, the surplus of which, after the payment of its debts and obligations, is, and by right ought to be, the property of its stockholders; that the original capital stock of appellee was $500,000, and that since the company was organized under the authority of the amendatory act of February, 1865, the capital stock has been increased from time to time, as the exigencies of its business and the purchase of other properties required, until now the capital stock of appellee is $35,000,000, of which shares to the amount of $32,969,100 have been issued and are now outstanding. The amended bill then avers "that in or about 1857 complainant became, ever since has been and now is a stockholder of the People's Gas Light and Coke Company and the owner of 1500 shares, of the par value of $50 each, of the original capital stock of said defendant corporation, which were and are full paid and non-assessable, and that complainant, since the year 1857, has been, and now is, entitled to receive his proportionate share of the surplus profits earned by the defendant corporation whenever any distribution of the surplus profits of defendant has

been made to the stockholders of said corporation." The
amended bill then proceeds as follows:

"That at various times since 1857, which times com-
plainant is unable to state definitely, said corporation has
declared dividends of stock and money and has made dis-
tributions of profits among its other stockholders to the ex-
clusion of complainant; that complainant has participated
in none of such distributions of stock, money or other prop-
erty; that complainant has inquired of said corporation,
and of its officers and managers, the time and amount, char-
acter and extent of such distributions of stock, money and
property, but although complainant has so as aforesaid de-
manded to know the times, extent and character of said
distributions, yet defendant, its officers and managers, have
hitherto failed and refused to inform complainant thereof,
and still do so refuse, to the manifest injury of complain-
ant and in fraud of his rights as a stockholder of said
corporation. Complainant is informed and believes, and so
states, that defendant has acquired stocks, bonds and other
securities of the aforesaid corporations, by consolidation or
otherwise, which were and are of great value, and which
complainant is informed and believes have, either in whole
or in part, been distributed to various favored stockholders
of defendant but complainant has been excluded from such
distribution; that complainant, before the commencement
of this suit, demanded from defendant a statement of such
acquisitions and distributions, but defendant failed and re-
fused to make any statement thereof to complainant; that
the complainant also demanded, before the commencement
of this suit, his proportion of such stocks, bonds and other
securities and property, but defendant failed and refused,
and still fails and refuses, to distribute to complainant his
proportionate share of the same; that before the commence-
ment of this suit complainant demanded of defendant that
it account with him for the profits of its said business and
concerning the management thereof, and that it inform the

complainant of the terms and conditions upon which defendant acquired the properties, privileges, franchises and effects of the aforesaid companies, and of the terms and conditions upon which it holds the same, and the amount, character and value thereof; and also, before the commencement of this suit, demanded of the defendant opportunity to examine the books, records and papers of the defendant, and demanded a statement of the conditions of the business of defendant and of the conditions upon which the defendant acquired the aforesaid securities, properties, franchises, privileges and effects of the aforesaid companies, and demanded the proportion of the capital stock of said company distributable to complainant by reason of his original holdings, and demanded an account by defendant of and concerning its business and affairs since complainant became a stockholder therein, and of the amount of its profits distributed to its stockholders, as aforesaid, and of the amount and disposition of the profits distributable to complainant on account of his said holding and ownership, as aforesaid, and the privilege of inspecting the books, records and papers of defendant to which complainant is entitled as a stockholder, as aforesaid, but the complainant further shows that defendant failed and refused, and still does fail, neglect and refuse, to account to complainant for the profits of its said business or concerning the management thereof, and to inform complainant of the terms and conditions upon which the said defendant has acquired the property and franchises of the aforesaid companies, or the terms or conditions upon which defendant holds the same, or the amount, character or value thereof, and has heretofore failed, neglected and refused, and still does, to permit complainant to ascertain from the books, records and papers of defendant the past or present condition of its business or the conditions upon which defendant acquired the aforesaid securities, properties and franchises of the aforesaid companies, and failed and refused, and still does fail and re-

fuse, to distribute to the complainant his proportion of the capital stock of said company distributable to him by reason of his original holdings, and the increase thereof, and failed and refused, and still does fail and refuse, to render complainant an account concerning its business and affairs and the amount of its profits distributable to its stockholders, as aforesaid, and of the amount and disposition of the profits distributable to complainant upon account of his said holdings, as aforesaid, and defendant failed, neglected and refused, and still does fail, neglect and refuse, to allow the complainant the privilege of inspecting the books, records and papers of defendant; that the officers and agents of defendant are fraudulently diverting the revenue, gains and profits of said corporation from the proper channels and from its stockholders proportionately, and are applying said revenue, gains and profits to the benefit of certain of the stockholders of said company, and thereby defrauding complainant and others of said stockholders of his and their rights in the premises, and that defendant is conspiring with various persons to complainant unknown, but who, when discovered, he prays may be made parties to this bill, to deprive complainant of his proportionate share of the revenues, gains and profits of defendant and of his rights as a stockholder, and so conspiring is distributing to such other unknown persons certain of the moneys and profits and things valuable which of right belong to complainant, and thereby defrauding complainant, to his irreparable loss and injury, and complainant fears and charges that he is in danger of losing the amount due him as his proportionate share of said revenue, gains and profits of said corporation unless some suitable person is appointed by this honorable court, as receiver, to receive and take charge of the books of account of said corporation and collect the amounts due the same, and receive and take charge of said corporation's assets and collect and receive the revenue, gains and profits

due or to become due to defendant as one of the stockholders and owners of stock therein."

The prayer of the amended bill was for an answer, and that defendant may be required to "account to complainant of and concerning the business and affairs of said company since complainant has been a stockholder therein, as aforesaid, the amount and character of its capital, the amount of said capital to which complainant has become entitled, from time to time, by reason of the increase of said capital, and what, if any, disposition has been made thereof, and concerning the profits made by defendant in its business since complainant has been a stockholder therein, and concerning the amount of the profits of said consolidated corporation, and to set forth and discover the amount and nature of such profits payable to complainant on account of his said holdings, and what, if any, disposition has been made thereof, and to set forth and discover the nature and character of the transactions between the defendant and the aforesaid corporations whose property and franchises have been acquired by the defendant by lease, purchase or otherwise, or through consolidation, and the amount and character of the securities acquired by defendant as the result of such lease, purchase or consolidation, and what disposition has been made thereof, and the nature, character and proportion of said securities distributable to complainant upon account of his holdings, as aforesaid, and upon account of the stock to which complainant would be entitled by reason of his said holdings and by reason of the increase in the capital of defendant, and what, if any, disposition has been made thereof, and that defendant may be required to pay complainant such sums as may be found to be due upon such accounting, together with legal interest, and that defendant may be decreed to surrender to complainant the proportion of the capital of defendant to which complainant is entitled by reason of his ownership of said fifteen per cent of the original capital of defendant, and such securities as have

been acquired by the defendant either by purchase, lease or through the consolidation of said defendant with the aforesaid companies as complainant may be entitled to receive, and that defendant may be required to set forth and discover the nature and extent of complainant's rights, from time to time, as a stockholder in defendant, and of the business and affairs of defendant since complainant has been a stockholder therein, so far as may be necessary to a complete adjustment of the accounts between complainant and defendant and as equity may require, and to that end that defendant may be required, under the supervision of the court, upon such terms as may seem proper, to submit its books, records and papers for the inspection of complainant or his solicitors, or so much thereof as may be necessary to a complete understanding of the business and affairs of defendant since complainant has been a stockholder, and that some proper person may in the meantime be appointed by the court, as receiver, to take charge of said corporation's books of account and collect the accounts due and receive and take charge of said corporation's assets, and collect whatever other money or property may belong or be due to said corporation, and receive and collect the revenue, gains and profits now due said corporation and to become due, and that complainant may have such other and further relief as equity may require."

The first question arising upon this record is the sufficiency of the averment as to appellant's relation to the corporation. The appellee contends that the statement in the amended bill "that in or about 1857 complainant became, ever since has been and now is a stockholder of the People's Gas Light and Coke Company and the owner of 1500 shares, of the par value of $50 each, of the original capital stock of said defendant corporation," is the statement of a mere legal conclusion, and this contention has been sustained by the circuit and Appellate Courts. Whether this averment is sufficient to require appellee to answer the bill

has received exhaustive discussion by counsel, both in their briefs and in the oral argument. The general rule that a pleading, in equity as well as at law, should state facts and not. mere conclusions of law is plain enough, but it is not always an easy matter to determine whether a particular statement in a pleading is a statement of facts which ought to be pleaded or a conclusion of law which should be avoided. So far as we know, no one has attempted to formulate a rule which will enable one in all cases to determine whether a statement belongs to one class or the other. The books abound with cases where it became necessary to determine whether a particular statement was a statement of ultimate fact or an inference of law. But these cases, while useful as mere precedents, are of little value as authorities, except where the same statement occurs under like circumstances. As we understand appellee's contention, it is that appellant should state the manner in which he became a stockholder and the owner of the shares claimed. The general statement in the bill that appellant in 1857 "became, ever since has been and now is a stockholder" of the appellee company "and the owner of 1500 shares, of the par value of $50 each, of the original capital stock of said defendant corporation," is a charge or statement of an ultimate fact. Story, in his work on Equity Pleadings, (10th ed. sec. 28,) says: "A general charge or a statement, however, of the matter of fact is sufficient, and it is not necessary to charge minutely all the circumstances which may conduce to prove the general charge, for these circumstances are properly matters of evidence, which need not be charged in order to let them in as proofs." Had appellant stated in his bill that in 1857 he was asked to subscribe for stock in the defendant company, and that he thereupon signed his name to a subscription list, by which he agreed to subscribe for 1500 shares, and that afterwards he was called upon by the company and paid the full amount of $50 per share, which was then and there accepted by

said company, and that thereupon said company, by its duly
elected president and secretary, then and there issued to ap-
pellant a certificate of stock, under the corporate seal of
the company, in evidence of appellant's ownership of 1500
shares of the original capital stock of said company, and
that thereupon appellant's name was duly enrolled upon
the books of said corporation as a stockholder, these sev-
eral averments would be merely evidentiary in their char-
acter, and when taken together they would tend to prove
that appellant was a stockholder and the owner of 1500
shares of stock; or if the facts above recited were stated
with reference to another person, and appellant should add
the averment that after the issuance of said stock to such
other person said stock was duly assigned to appellant for
a valuable consideration and transferred on the books of
the company to appellant, this would not change the situ-
ation. The facts averred would be subsidiary in their na-
ture and tend to prove the ultimate fact charged that the
appellant is a stockholder and the owner of said shares.
We cannot conceive of any averment that could be made in
elaboration of the statement that appellant is a stockholder
and the owner of these shares of stock that would not be
open to the objection that it was an unnecessary pleading
of evidentiary facts. If the legal rights of a stockholder
and the owner of shares of stock were varied according to
the method by which those relations were created, and ap-
pellant sought the enforcement of rights that only belong
to such stockholders and owners of stock as acquired these
relations in a particular method, then it would be neces-
sary to aver, not merely the general relation, but the fact
that such relation was acquired in accordance with the
method which gave rise to the rights claimed. But we are
aware of no special circumstances which distinguish be-
tween stockholders, giving to one rights which are denied
to others. The general rule is that all stockholders stand
on an equal footing, both as to benefits and burdens. There

is no ambiguity in this statement. No one could be deceived or misled as to the basis upon which appellant rests his claim. He charges that he is a stockholder in the gas company. He sets forth when he became such stockholder and the extent of his ownership in the capital stock. This is enough to enable appellee to answer this part of the bill. A simple denial of this averment will form an issue of fact which is susceptible of being tried and determined.

Samuel Doll, having been made a party defendant upon his intervening petition claiming that he had purchased one-fourth interest in the stock of appellant since the commencement of the suit, filed a cross-bill, in which some averments are made in relation to the ownership of the stock in question that are not contained in the amended bill of appellant. Doll's cross-bill was dismissed on demurrer and he has not appealed from that order. Both of the parties to this appeal, however, have discussed the demurrer to appellant's bill in the light of certain averments that are only found in Doll's cross-bill. In this respect counsel are under a misapprehension. The cross-bill is not properly before this court, and if it were, facts stated only in it could not be considered in determining the sufficiency of the amended bill. To thus bring extraneous facts into view would, in effect, be to recognize a speaking demurrer, which is never allowable.

The next objection urged to the amended bill is, that it shows upon its face that appellant has been guilty of such *laches* as to bar his recovery. There are two averments in the amended bill of demands made by appellant upon appellee,—one a demand that appellee account with appellant, and the other that appellant be given an opportunity to examine the books. The time when these demands were made is stated to have been "before the commencement of this suit." About forty-eight years elapsed between the time when appellant became a stockholder and the commencement of this suit. A demand made any time between

1857 and the filing of the bill would sustain the averments in this respect. Construing the pleading most strongly against the appellant, it must be assumed that the demands stated were made at the earliest time they could have been made after he became a stockholder. The making of a demand forty or fifty years before the bringing of the suit would amount to nothing. If a demand was a necessary condition precedent to the right to sue, it seems inevitable that appellant was guilty of gross *laches* either in making his demand or in the commencement of the suit. Want of diligence in making such demand is as much a barrier as delay in the commencement of the suit, and if unexplained, the door of equitable relief will be closed to him in the one case as well as in the other. There is no attempt in this bill to explain or excuse this unusual delay.

Appellant seeks to invoke the rule applicable to trust relations. It is contended that a corporation is a trustee for its stockholders, and that the rule which prohibits a trustee from relying on *laches* when called to an account in respect to the trust is applicable to the situation presented by this bill. There is some confusion in the authorities in regard to the true basis upon which courts of equity take jurisdiction, at the suit of a shareholder, for the purpose of administering affirmative or restrictive relief. Many—perhaps the majority—of the law writers of recognized ability have referred the jurisdiction to the general power which courts of equity exercise over the subject of trusts. Thus, in Morawetz on Corporations (vol. 1, sec. 237,) it is said: "The relation between a corporation and its several members may, for practical purposes, be treated as that of trustee and *cestui que trust*." In High on Injunctions (vol. 2, sec. 1184,) it is said that the jurisdiction of equity to control or restrain the operations of corporate bodies "may not inappropriately be considered as a branch of the general jurisdiction of courts of equity over the subject of trusts." Whatever may be the diversity of views in respect to the

basis of the jurisdiction, there is substantial unanimity among the authorities that the jurisdiction in a proper case exists to redress grievances of a shareholder which are personal to himself as such shareholder. "A shareholder must, however, use due diligence in the assertion of his rights to entitle him to relief, in equity, against a wrongful diversion of corporate funds or other misconduct on the part of the company, and negligence on his part in instituting proceedings will deprive him of the relief desired." High on Injunctions, sec. 1206.

*Coquard* v. *National Linseed Oil Co.* 171 Ill. 480, was a bill by a stockholder against the corporation in which the stockholder prayed for the complete discovery of the affairs and conditions of the corporation; that it and its officers should be enjoined from interfering with him in the exercise of his right to examine the books of the company, and from negotiating a proposed loan or declaring or paying any further dividends, and for a receiver, and other relief. The bill was dismissed on demurrer. *Laches* upon the part of the stockholder, apparent upon the face of the bill, was urged as a reason for denying relief. In reference to that question this court, on page 484, said: "He has been a stockholder since June 15, 1889, and, for aught that appears, participated in the alleged illegal acts of which he complains, in respect to the acquirement of linseed oil mills and the trust character of the business done. From that time he has had, so far as appears, full knowledge of the occurrences which he recites, at the time they took place. As a stockholder he presumably had such knowledge, and his participation or *laches* of many years would, either of them, bar him from obtaining relief on his own account. The general rule is, that a complainant must be free from participation in the illegality or wrong of which he complains, and his acquiescence and long delay will prevent him from taking personal advantage of their invalidity."

The above authority is applicable to the case at bar. The acts and omissions on the part of the corporation of which appellant complains are in the main such as would naturally be within his knowledge. If the company had refused to pay the appellant any dividends or otherwise recognize his rights as a stockholder, these facts have been known to appellant during all the years he has been a stockholder. Having knowledge that the company was pursuing a course of conduct in respect to appellant that amounted to a total denial of all his rights as a stockholder, reasonable diligence required that he should have made his appeal to a court of equity before his claim became stale. *Wilcoxon* v. *Wilcoxon*, 230 Ill. 93.

Appellant finally contends that the court erred in refusing him leave to amend his bill after the demurrer had been sustained the second time. The question of allowing amendments in chancery proceedings is one very much in the discretion of the trial court, and this court will not reverse for refusing leave to amend unless there has been an abuse of discretion. (*March* v. *Mayers,* 85 Ill. 177.) The general rule is, that if the bill is a defective statement of a good cause of action, the bill should be retained for amendment, (*Puterbaugh* v. *Elliott,* 22 Ill. 157,) but if the bill is so defective, in substance, as to show that the complainant has no cause for equitable relief, it is not error to dismiss the bill, especially after the court has sustained one demurrer and the complainant has had an opportunity to avoid the objections by amendments. We conclude that there was no abuse of discretion in refusing appellant leave to amend his bill.

It follows from what has been said that there was no error in sustaining the demurrer and dismissing the appellant's bill.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*