JAMES CROSS, Appellant, *vs.* MARY JANES *et al.* Appellees.

*Opinion filed October 22, 1927—Rehearing denied Dec. 8, 1927.*

1. EVIDENCE—*counsel's stenographer not necessarily incompetent to take deposition.* The stenographer of counsel procuring a deposition, being a notary public, is not necessarily incompetent to act as commissioner as being a party "interested in the event of the suit," and when due notice is given and the opposing counsel make no objection to the commissioner until the term of court following the taking of the deposition, although presumably aware of the fact that the commissioner was counsel's stenographer, the court does not err in receiving the deposition.

2. SAME—*when defendants must make satisfactory explanation of alteration of deed.* Where the title of defendants depends upon whether a deed was properly altered, and where the complainant, who is seeking to dispossess the defendants on the ground that his name as grantee of the remainder in fee was improperly stricken from the deed, introduces the deed in evidence, which on its face discloses the alteration, and introduces further evidence in support of his claim, the burden shifts to the defendants claiming the benefit of the deed as altered to show the alteration was made under circumstances rendering it lawful.

3. LIMITATIONS—*Statute of Limitations does not run against remainderman until after termination of life estate.* As statutes of limitation are based on the theory of *laches* the statute does not run against a remainderman or reversioner until after the life estate has terminated, and as vendees of the life tenant cannot be dispossessed before the termination of the life estate, it is only after that event that their possession will be adverse to the remainderman or reversioner.

4. LACHES—*when, only, can defense of laches be invoked and applied.* It is only when by delay and neglect to assert a right the opposing party is lulled into doing that which he would not have done or into omitting to do that which he would have done relative to the property had the right been properly asserted, that the defense of *laches* can be invoked and applied.

APPEAL from the Circuit Court of Cumberland county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.

VAUSE & KIGER, (J. I. DILSAVER, of counsel,) for appellant.

RAYMOND G. REAL, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cumberland county dismissing for want of equity appellant's bill, filed to the March, 1926, term of court, seeking to reform a certain deed, to set aside another deed as a cloud upon appellant's title, and praying for a writ of assistance for the purpose of placing appellant in possession of approximately twenty-five acres of land situated in that county.

The material facts disclosed by the proof are, that in June, 1889, John Gray and his wife, Elizabeth, for a consideration of $250, conveyed the property here involved by quit-claim deed, wherein the grantees were designated as "Alexander Cross and Eliza Cross, and at their death to James Cross, their son." October 14, 1892, Cross and his wife, Eliza, who were the parents of appellant, conveyed the same property by warranty deed to their two daughters,

Mary and Winnie Cross. The former, and the daughter and only heir of the latter, who is deceased, are appellees here. The consideration named in the second deed was one dollar, and the grantors reserved to themselves a life estate. The two deeds were thereafter recorded on the same day, November 2, 1892, but the county records show the omission of the words, "and at their death to James Cross, their son," appearing in the deed of June, 1889. That original instrument has been certified to this court, and an inspection thereof shows two pen lines drawn horizontally through the aforesaid quoted words. The pen lines are of a different colored ink than that used in the quit-claim deed form at the time of its execution and acknowledgment. John Gray, one of the grantors in the first deed mentioned, died prior to this litigation, but his wife, Elizabeth, was alive and eighty-four years of age. Her deposition was taken, the substance of which was, that she recognized and identified the signatures of herself and husband on the original deed which they made to Alexander and Eliza Cross, and at their death to James Cross, their son, and that neither she nor her husband changed the deed or crossed out any words after executing it. She also stated that the last payment of the consideration for the sale was made to her husband by the acceptance of a team of horses, which were the property of appellant, who was then a minor. Eliza Cross, appellant's mother, died in 1895, but his father continued to live on the property until a year or so prior to his death, which occurred in October, 1925. The bill in this case was filed by appellant at the term of court succeeding his father's death.

Appellant at the time of the trial was fifty-two years of age. He testified, in substance, that he first saw the deed to the property at the time it was made and received by his parents and at that time there were no pen marks or erasures on it; that his two horses were used as part payment on the property; that a year or so after his mother's

death was the first time he knew certain words in the deed
had been crossed out; that his father gave him the altered
deed about 1907, and told him at that time, and on other
occasions, that he didn't want to change the deed but the
mother of the witness insisted upon it being changed, and
it was done to satisfy her; that the father went to one
Welshimer three times before he would change it, and on
that occasion Welshimer told the father, "I will, but it ain't
worth the paper it's written on." It appears that appellant
farmed the land for some years during his father's lifetime.
The evidence of two other witnesses was introduced by ap-
pellant. One of these was an insurance agent, who recalled
a visit to the Cross home in 1892 seeking to insure the
house. He testified they stated the insurance would have
to be in appellant's name, as the property was in his name
because they had traded in his team of horses as a part of
the purchase price. Another witness, a nephew of appel-
lant's father, testified the latter talked with him several
times, after 1890, about the purchase of the land and trad-
ing in appellant's team as part payment; that his uncle said
the land was deeded to appellant at the death of the latter's
parents; that his wife kept at him to change the deed; that
after the deed was changed his uncle told witness about his
wife and himself going to Welshimer three times before the
latter would mark the deed out.

Mary Janes, one of appellees, and her husband, were
the only witnesses who testified in their behalf. The for-
mer stated that appellant had rented and looked after the
property up to the time of their father's death and there-
after delivered possession thereof to her, and she had since
rented it; that the deed executed by her father and mother
to herself and sister in 1892 was delivered to witness by
appellant after their father's death, and he then stated the
place was hers and that she was the only one who could
have the buildings insured. She insured the buildings at
that time and had no knowledge that appellant claimed the

property until the bill was filed in this case. Her husband testified corroborating some of the statements made by his wife. Appellant sought to explain some of the statements alleged to have been made by him to his sister and as testified to by her, but the chancellor refused to hear that testimony.

Two material questions confront us for decision: First, whether the proof sufficiently establishes an alteration in the deed after its execution and delivery and whether there was a satisfactory explanation of such alteration; and second, if the deed was so altered, may *laches* be imputed to appellant because he did not bring his action at an earlier date and prior to the death of his father, who, appellees claim, must have known the true facts pertaining to the entire transaction and the deeds.

Appellees object to the consideration of any of the evidence contained in the deposition of Elizabeth Daggy, former wife of John Gray, and that the court erred in receiving it after appellees made a motion to suppress the deposition. The reason for the motion was that the deposition had been taken, upon due notice, at the residence of Elizabeth, before a notary public who at the time was a stenographer employed in the office of counsel for appellant. Section 33 of chapter 51 (Smith's Stat. 1925, p. 1317,) provides that "the party, his attorney, or any person who shall in anywise be interested in the event of the suit, shall not be permitted to dictate, write or draw up any deposition which may at any time be taken under this act," etc. The commissioner before whom the deposition was taken was not "interested in the event of the suit," within the meaning of the statute. Her employment as a stenographer by appellant's solicitors might, and not unnaturally would, cause suspicion in appellees' mind of her fairness and impartiality but would not make her interested in the event of the suit. We do not approve the practice of having an employee of solicitors in a case made commissioner to take

depositions, but we cannot say it is within the prohibition of the statute. The solicitors of both appellant and appellees reside in the same city—Mattoon, Illinois. The deposition was taken in that city. Notice in writing was given appellees' solicitors on February 1, 1927, that the deposition would be taken upon oral interrogatories at the residence of the witness in the city of Mattoon on February 12, 1927, before Iva M. Richeson, notary public. Iva M. Richeson was the stenographer of appellant's solicitors—a fact which was presumably known to appellees' solicitors. The deposition was taken February 12, but it does not appear that the solicitors of appellees were present when the deposition was taken. No objection to the commissioner was made at the time the deposition was taken. The motion to suppress because the commissioner was the stenographer of appellant's solicitors was made March 21, 1927, during the March term of court. We do not say appellees were required to object to the commissioner before the deposition was taken, but it would have been the part of prudence to have done so where the circumstances were such that it would have caused no particular inconvenience to appellees. Appellees have cited *Knickerbocker Ice Co.* v. *Gray,* 72 N. E. (Ind.) 869, and cases from other States, in support of their contention that the court erred in admitting the deposition. We are not informed as to what the statutes of those States are. In the case mentioned, the court said it was the obvious intention of the statutes that the commissioner should be impartial and free from bias and liability to be influenced by either of the parties. The court did not err in receiving the deposition.

The testimony of appellant and his witnesses to certain declarations made by appellant's father while the latter was in possession of the property tends to establish that the alteration in the deed of 1889 was not made until after its execution and delivery. Appellees objected to the admission of any evidence as to the statements made by appel-

lant's father or mother as declarations against interest because the time was not sufficiently definite, and if made after 1892 the statements were in derogation of the deed of that date made by appellant's parents to his sisters. We may concede that evidence was not competent, but there is sufficient competent evidence upon that question to prove the alteration of the deed after its execution.

The only proof offered relative to the alleged alteration was presented by appellant, who introduced the deed in evidence. Counsel for the parties here do not agree upon whom the burden rests to show whether the alteration was lawful or unlawful. An interlineation or alteration of a deed was involved in the case of *Waggoner v. Clark*, 293 Ill. 256. This court said in that case, it is well settled there is no presumption of law that an instrument has been altered from its condition when executed but that such is a question of fact, and the party producing such instrument is called upon to explain the alteration; that the alteration shall be explained by the party claiming the benefit of the paper, and if it is suspicious in appearance and a satisfactory explanation is not made, a conclusion of fact follows against it; that where the alteration is established either by inspection of the instrument or the alteration is admitted, the burden of proof shifts to the person claiming the benefit of the instrument as altered, to show the alteration was made under circumstances rendering it lawful. There was no proof in the case at bar controverting appellant's evidence that an alteration had actually been made in the deed. Appellees claimed the benefit of the instrument as altered, because by such alteration their parents' title was changed from a life estate to a fee simple title. Unless the parents of appellees, as the latter's grantors, were seized in fee of the property they could not by the second deed have passed the fee title to appellees. We think the burden of proof was upon appellees to show the alteration was made prior to the execution and delivery of the deed or

to satisfactorily explain that such alteration was made under circumstances making it lawful. (*Waggoner* v. *Clark, supra; Catlin Coal Co.* v. *Lloyd,* 180 Ill. 398; *Hodge* v. *Gilman,* 20 id. 437.) However, as previously stated, no proof whatever was offered by appellees relative to the alteration of the deed of 1889.

The remaining question is whether appellant may be charged with *laches.* It is true, he testified he first learned of the words in the first deed being crossed out or altered about a year or two after his mother's death, which occurred in 1895. He also stated his father delivered the altered deed to him about 1907, and explained to him at that time, and upon succeeding occasions, why and by whom the instrument was changed. The deed of June, 1889, unaltered, gave to Alexander Cross and his wife a life estate, and at their death the property was to go to their son, James Cross, the appellant. The words in the deed, "and at their death to James Cross, their son," made appellant the remainderman. It may be that appellant might have instituted an action at an earlier date merely to reform the deed of 1889, but we are not prepared to say that such action was obligatory. His father was in possession of the property, and no action for the possession thereof could have been commenced until the father's life estate had been extinguished. No provision of our Statute of Limitations is applicable here as a bar to appellant's rights. It has been held that the Statute of Limitations does not run against the remainderman or reversioner until after the life estate is ended, and it is only after the latter event occurs that possession will be adverse to the remainderman or reversioner. The possession of the life tenant or his vendee during the continuance of the life tenancy is in contemplation of law the possession of the remainderman or reversioner. The latter cannot, during the life of the person for whose life the life estate is, bring an action against the person in possession under such life ten-

327—35

ancy to recover possession of the premises. All statutes of limitation are based on the theory of *laches,* and no *laches* can be imputed to one who has no remedy or right of action. (*Borders* v. *Hodges,* 154 Ill. 498; *Madison* v. *Madison,* 206 id. 534; *Gibbs* v. *Gerdes,* 291 id. 490, and cases there cited.) *Laches* is governed largely by the facts and circumstances present in each case. Charging one with *laches* implies that he is in error. It is only when by delay and neglect to assert a right the opposing party is lulled into doing that which he would not have done, or into omitting to do that which he would have done relative to the property had the right been properly asserted, that the defense of *laches* can be invoked and applied. In the instant case, on different occasions appellant's father admitted, at least to appellant and two other witnesses, that the deed of June, 1889, had been altered, and that for a long time he was opposed to its being done but submitted because his wife insisted upon the change being made. The parties involved were all members of the same family, and this situation frequently lessens the force and applicability of the doctrine of *laches.* The position of appellees has not been changed or prejudiced by the delay of appellant, so far as appears from this record, except possibly in the obtaining of proof explaining the alteration in the deed. The testimony of one of the original grantors in the deed of June, 1889, was available, but it, if considered, would not be of benefit to appellees. Under the circumstances and facts presented we do not think *laches* should be imputed to appellant as a bar.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of appellant's bill.

*Reversed and remanded, with directions.*