RAYMOND V. ZEGERS, Plaintiff-Appellee, Cross-Appellant, *v.* ZEGERS, INC., *et al.,* Defendants-Appellants, Cross-Appellees.

First District (1st Division)    No. 61164

Opinion filed May 5, 1976.

Rathje, Kulp & Monaghan, of Chicago (Robert F. Monaghan and Theron L. Rathje, of counsel), for appellants.

Pope, Ballard, Shepard & Fowle, of Chicago (Marshal I. McMahon, Paul E. Freehling, and Terry Satinover, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court: ·

Raymond V. Zegers sued Zegers, Inc. and William H. Zegers (William), Suzanne Zegers (Suzanne) and Anna Mae Zegers (Anna Mae), individually, claiming ownership of 20 shares of common stock of Zegers, Inc. issued to him in 1934. Count I of the complaint asks for a determination that plaintiff is a shareholder of the corporation and for payment to him of all cash and stock dividends to which he is entitled on the 20 shares of common stock. Count II requests that plaintiff's preemptive rights to stock issued by the corporation be recognized. Count III is a shareholder's derivative action on behalf of the corporation against the individual defendants charging them with misappropriating corporate funds for personal gain.

The circuit court heard evidence on all three counts. It found for the plaintiff on Count I and ordered that the 20 shares of stock be endorsed by plaintiff, and that plaintiff be paid $50,000 in exchange for his surrender of all rights in the stock. The court dismissed Counts II and III. Both plaintiff and defendants appeal from the circuit court's order as to Count I. Plaintiff also appeals the dismissal of Counts II and III.

Several issues are presented for review, but we need only consider the defense of laches.

Zegers Metalweatherstrip Company, Inc. was founded and operated by Harry Zegers and his son, Harry, Jr. The former was plaintiff's father, the latter was plaintiff's brother. William, president of the corporation from 1960 to at least the time of trial, was the son of Harry, Jr., Suzanne is William's wife and Anna Mae is William's mother. The individual defendants have comprised the board of directors of the corporation since 1962. Zegers Metalweatherstrip Company, Inc. was incorporated in Illinois in 1931 and changed its name to Zegers, Inc. in 1935.

In 1932, Harry Zegers and Harry, Jr., fearing that machinery owned by the company was in danger of being attached by its landlord, caused a fictitious chattel mortgage on the machinery to be recorded running to

plaintiff for a loan the chattel mortgage recited was made to the company. Plaintiff concedes that no such loan was ever made.

In 1934, Raymond released the chattel mortgage so the corporation could use the machinery as security for a *bona fide* loan from a third party. To show consideration for the release of the chattel mortgage and the payment of the fictitious loan, the company issued 20 of its 55 shares of common stock to the plaintiff. The next year, when the company's name was changed, a new certificate in the same amount was issued in plaintiff's name. The first time plaintiff saw either certificate was in 1936 when he was passing through Chicago and his father showed him both certificates. According to the plaintiff, he left them with his father for safekeeping.

In 1938, the stock issued in plaintiff's name was transferred on the company's books to Anna Mae, and a new certificate for those and other shares was issued to her. Plaintiff claims he was not informed of this transfer until after the institution of this lawsuit. In 1939, Harry, Jr., then secretary-treasurer and a director of the corporation, sent plaintiff, who was in Arizona, the two stock certificates (the original certificate and the one bearing the new corporate name) with the word "cancelled" written across the front and Harry, Jr.'s signature underneath. A letter from Harry, Jr. asking plaintiff to sign the certificates and return them to the company accompanied the certificates. Plaintiff's wife testified that she and her husband decided that the stock could not be transferred unless plaintiff himself endorsed and surrendered the certificates, the reason being that the certificates stated on their face that the stock is "transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed." Plaintiff neither signed nor returned the certificates. Subsequently when he mislaid them, he did not notify the corporation that they were lost or request the issuance of a replacement certificate.

Plaintiff was employed by the corporation in Chicago from 1948 until 1971, most of the time in the capacity of a manufacturer's representative. Plaintiff and his wife discussed the stock certificates during the time of his employment, but did not mention them to plaintiff's father or brother or anyone else connected with the corporation. Plaintiff found the mislaid certificates in 1961, but he and his wife decided not to discuss his shareholder status with anyone because they feared plaintiff would lose his employment with the corporation as had another brother who previously worked there.

In 1965, plaintiff presented a list of his stockholdings in 19 different companies to an attorney he consulted about drafting a will for him. The list did not include stock of Zegers, Inc. The attorney did not remember

discussing the Zegers' stock with the plaintiff, although plaintiff testified he showed the certificates to his attorney.

Claude Wells, an auditor for Zegers, Inc., discovered during an audit of the company's books in 1949 that stock certificates issued in plaintiff's name were missing from the corporation's records. Wells testified that he asked plaintiff about the certificates and plaintiff responded that he did not have any stock certificates and was not a shareholder. Wells again asked the plaintiff about the stock years later when Zegers, Inc. decided to file its income tax returns under Subchapter S which required the consent of all the shareholders. Plaintiff's answer to Wells was the same as in 1949. Plaintiff denied having these conversations with Wells and testified that no one else connected with the corporation ever asked him about the lost certificates.

In the 23 years plaintiff was employed by the corporation,[1] it increased its business tenfold, built a new plant and doubled the number of employees. The corporation borrowed money from the individual shareholders and from lending institutions, secured by the pledge of the corporation's stock, and in one instance personally guaranteed by William. The plaintiff acknowledged that he never received any dividends or other communications from the corporation.[2] He testified that he saw the business expanding but did not know its value. Plaintiff first asserted his rights to twenty fifty-fifths of the ownership of Zegers, Inc. after being forced to retire in 1971. By that time both his father and brother, Harry, Jr., were dead and William was the corporation's president. This suit was filed shortly thereafter.

The basis for all relief requested by the plaintiff is his claim that he is the owner of the 20 shares of Zegers, Inc. stock and thus entitled to all the rights of a shareholder, both cash and stock dividends, preemptive rights and an accounting of the company's funds, allegedly mismanaged by the three individual defendants as officers and directors. Defendants' position is that plaintiff's delay of 32 years[3] in claiming ownership of the stock constitutes laches which bars recovery.

Laches is such neglect or omission to assert a right over a period of time taken with other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. *(Slatin's Properties, Inc. v. Hassler* (1973), 53 Ill. 2d 325, 330, 291 N.E.2d 641; *Anundson v. City of Chicago* (1973), 15 Ill. App. 3d 1032, 1039, 305 N.E.2d 376.) There is no absolute rule by which laches can be determined *(Colucci v. Chicago Crime*

---

[1] *i.e.*, from 1948 to 1971.

[2] Stock has not been offered for sale by Zegers, Inc. since 1948. The last stock dividend was declared in 1953, but cash dividends were declared in 1951, 1953, 1955 and annually from 1959 to 1971.

[3] *i.e.*, from 1939 to 1971.

*Commission* (1975), 31 Ill. App. 3d 802, 334 N.E.2d 461); the application of the doctrine depends on the circumstances of each particular case. *(Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341; *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 309 N.E.2d 632.) As a general rule, to charge a party with laches, it is essential that the party have knowledge of the facts upon which his claim is based. *Masters v. Elder* (1950), 407 Ill. 512, 95 N.E.2d 360; *Gill v. Gill* (1972), 8 Ill. App. 3d 625, 290 N.E.2d 897, *aff'd*, 56 Ill. 2d 139, 306 N.E.2d 281.

A major question in this case is the time plaintiff first knew or should have known that his right to ownership of the stock was disputed. Plaintiff claims that this occurred in 1971 when he confronted William with his claim of ownership and was informed that Zegers, Inc. did not consider him a shareholder. Defendants contend that plaintiff's receipt in 1939 of the certificates marked "cancelled" with the letter from his brother requesting their endorsement and return was notice to him that the corporation did not recognize him as a shareholder. They argue that the plaintiff failed to exercise due diligence in then asserting his ownership and to permit him now to assert his claim would prejudice them.

■■ Even though specific facts may not be known by a party, where the circumstances are such that a reasonable person would be expected to make inquiry regarding them, a party will be charged with laches if he fails to ascertain the truth through readily available channels. *(Ater v. Smith* (1910), 245 Ill. 57, 91 N.E. 776.) Plaintiff argues that his receipt of the certificates and his brother's letter was not sufficient to put him on notice that the company repudiated his ownership because he had a right to rely on the language in the stock certificate requiring endorsement and surrender. The plaintiff, however, is chargeable with the facts which he would have obtained through inquiry had the circumstances been such that a man of his experience and intelligence would have questioned the procedure being followed by the corporation. The "cancelled" certificates together with the letter requesting endorsement and return was itself enough to put the plaintiff on notice that his stock ownership was not recognized by the corporation, notwithstanding the language of the certificates. This circumstance becomes more significant when coupled with the plaintiff's knowledge that he had given no consideration for the stock and it had been issued in his name as part of a sham transaction. He never questioned his brother or other corporate officials about the certificates or why they had been sent to him marked "cancelled." For the next 32 years he did not remonstrate in any way to anyone over what must have appeared to him as cavalier treatment if he regarded himself as the owner of the stock. His continuing silence after receipt of the stock certificates together with his later conduct and experience indicate he knew that Zegers, Inc. did not consider him a

shareholder. After locating the certificates in 1961, he made no attempt to assert a right to shareholder's status even though he was then working for the corporation in a position of authority. Plaintiff over a 32-year period never questioned the failure of the corporation to send him dividends, notices, reports or other communications. As an investor with substantial stock holdings in other corporations, he received communications and dividends from them, and this should have been enough to alert him to inquire why he did not receive similar communications from Zegers, Inc. It is unbelievable that a 36% shareholder would not have been surprised and inquired when upon the death of his father and brother he was not consulted about election of directors.

Plaintiff's employment by Zegers, Inc. from 1948 to 1971 gave him a firsthand observation of the company's growth. Although employment alone does not necessarily give an employee detailed knowledge of a business, the plaintiff's position of responsibility during a period of great physical and financial growth in the business leads to the conclusion that anyone in plaintiff's status would have made inquiry regarding this progress. It is patently unreasonable that a knowledgeable investor claiming a substantial interest in a family-owned, closely held corporation where he worked for 23 years could assume that no communications were sent, no shareholders' meetings held and no dividends paid during that time. These circumstances taken together demonstrate that plaintiff did indeed have knowledge that Zegers, Inc. did not consider him to be a shareholder. This required that he not sleep on his rights to the detriment of the defendants.

■■ Plaintiff rationalizes his silence as follows: First, he explains he was motivated by fear of losing his job and that this excused his failure to assert his claim at an earlier time. This explanation is weakened by his failure to include Zegers, Inc. in a list of his stockholdings he compiled for the attorney he asked to draw his will. He claims that he showed the attorney the Zegers' certificates but apparently declined to seek his advice on their status. This is inconsistent with his claim that he remained silent only to save his job since this consultation would have been protected by the attorney-client privilege and could not, therefore, have endangered his job. In any event, since he was not afraid to show his attorney the Zegers' certificates, his failure to include Zegers in the list of stocks raises a strong suspicion as to whether he actually considered himself a stock owner.

Second, plaintiff argues that his failure to receive any communications, notices or dividends from the corporation did not place him under a duty to inquire and was not the equivalent of notice that the company repudiated his ownership because he had received nothing even before the stock was transferred to Anna Mae. Though the plaintiff may have

been justified in not inquiring concerning dividends prior to 1938, while the corporation was apparently struggling, his failure to inquire concerning the lack of dividends and the absence of other communications despite his firsthand observations of the phenomenal growth of the company and the changes in its officers and directors in the next 32 years is inconsistent with his claim that he was an owner.

The standard of diligence in asserting a claimed right required by the court in *Foss v. People's Gas Light & Coke Co.* (1909), 241 Ill. 238, 89 N.E. 351, is applicable in this case. The plaintiff there became a stockholder in 1857 and brought suit in 1905, alleging he had been denied dividends, profits and his preemptive rights. The plaintiff claimed to have made a demand upon the company before instituting suit, but did not specify when. The Supreme Court, in holding that plaintiff was guilty of laches in both making the demand and instituting suit stated:

> "If the company had refused to pay the [plaintiff] any dividends or otherwise recognize his rights as a stockholder, these facts have been known to [plaintiff] during all the years he has been a stockholder. Having knowledge that the company was pursuing a course of conduct in respect to [plaintiff] that amounted to a total denial of all his rights as a stockholder, reasonable diligence required that he should have made his appeal to a court of equity before his claim became stale." 241 Ill. 238, 251.

*Stern v. Material Service Corp.* (1963), 44 Ill. App. 2d 198, 194 N.E.2d 511, involved a suit for declaratory judgment to determine the ownership of stock plaintiff claimed to have inherited from her mother, but which had been cancelled on the books of the company 17 years before her mother's death in 1938. The court held the claim was barred by laches where the mother had slept on her alleged rights for so many years, and where the daughter had delayed another 20 years even though she knew no dividends had been received and that her brother claimed the shares.

■■ The plaintiff in this case had reason to know that the company did not consider him a shareholder. This made it incumbent upon him to demand recognition of his rights and, if denied, to institute suit as soon as possible. Plaintiff's neglect for 32 years makes him chargeable with laches the same as if he had known the facts. *Neagle v. McMullen* (1929), 334 Ill. 168, 181, 165 N.E. 605.

■■ Plaintiff attempts to distinguish *Foss* and *Stern* and avoid the application of laches on the ground that these cases dealt with questions of original stock ownership rather than with the fraudulent transfer of stock by the defendant corporation. Plaintiff's contention that he was both the legal and equitable owner of the original 20 shares of stock issued in his name was denied by defendants' answer. The facts indicate that

plaintiff received the stock as part of a bogus transaction to forestall a creditor from seizing company machinery. Without more to explain why the stock was issued in his name, plaintiff failed to establish his beneficial ownership of the stock. He could not, therefore, demonstrate that the transfer to Anna Mae was fraudulent. The issue then in this case is not the alleged fraudulent transfer to Anna Mae, but whether plaintiff had shareholder status, the same issue as was presented in *Foss* and *Stern*.

The cases relied upon by the plaintiff in support of his contention that laches does not arise until plaintiff demanded and was denied his rights are distinguishable for the shareholders in those cases did not have knowledge which placed upon them the responsibility to make inquiry. Although in *Holly Sugar Corp. v. Wilson* (1937), 101 Colo. 511, 75 P.2d 149,[4] the court decided that the lack of dividends did not constitute notice of a denial of shareholder rights, in this case the plaintiff's failure to receive dividends is only one of many circumstances which did or should have put the plaintiff on notice of the repudiation of his rights.

Plaintiff in urging that laches not be applied argues that the company and the individual defendants owed a fiduciary obligation to him upon which he was entitled to rely over the period of time he remained silent. He contends that this duty was fraudulently breached. The plaintiff characterizes the relationship of the shareholder of the corporation as a trust citing *Allmon v. Salem Building & Loan Association* (1916), 275 Ill. 336, 114 N.E. 170, and urges that a shareholder may rely on the duty of the trustee corporation to act for his benefit. However, the court in *Foss* (241 Ill. 238, 249-50), while recognizing in some instances such a relationship can exist, concluded this would not excuse a shareholder's lack of due diligence in asserting his rights against corporate misconduct.

Other cases cited by plaintiff to support his argument that he was excused from exercising reasonable diligence are distinguishable.[5] The questions raised in those involved fraud on the part of officials who had the duty to disclose the matters in question. This was held to excuse due diligence on the part of a shareholder. The decisive issue did not, therefore, concern the plaintiff's status as a shareholder.

■■ Laches, unlike statutes of limitations, does not rest merely on the passage of time but is essentially a question of the inequity of enforcing a claim where the adverse party has changed his position due to lack of knowledge that the claim will be asserted. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341.) The defendants did change their positions and were prejudiced by plaintiff's failure to assert his claim earlier under the

---

[4] In addition to *Holly Sugar Corp.*, plaintiff relies on *Sharon v. Kansas City Granite & Monument Co.* (1939), 233 Mo. App. 547, 125 S.W.2d 959.

[5] *Winger v. Chicago City Bank & Trust Co.* (1945), 325 Ill. App. 459, 60 N.E.2d 560; *Auer v. Wm. Meyer Co.* (1944), 322 Ill. App. 244, 54 N.E.2d 394.

circumstances of this case. In the 32 years which elapsed from the time plaintiff received the "cancelled" certificates, the company has grown substantially. It borrowed several million dollars to finance its expansion. These loans were secured by the pledge of the stock of the individual defendants and one loan was personally guaranteed by William. The individual defendants made personal loans to the corporation totaling half a million dollars. They labored, took risks and incurred obligations to insure the financial success of their company while plaintiff sat by and risked nothing. The defendant corporation and the individual defendants have clearly changed their positions in reliance upon their belief that plaintiff was not a shareholder. Also, death has silenced plaintiff's father and brother who were involved in the original issuance and subsequent transfer of the stock, and this may be prejudicial to defendants. *(Neagle v. McMullen* (1929), 334 Ill. 168, 181, 165 N.E. 605; *Dempster v. Rosehill Cemetery Co.* (1903), 206 Ill. 261, 68 N.E. 1070.) To permit the plaintiff under these circumstances to reap the benefits of stock ownership at this time is inequitable.

■■  Plaintiff, however, claims that the defendants did have knowledge of the claim and are not, therefore, entitled to the protection of the doctrine of laches despite the change in the company. The knowledge concerning the claim of the plaintiff is indeed a consideration in determining whether to apply laches. *(Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341.) Plaintiff claims that the failure of the company to request an affidavit stating that the certificates were lost shows that defendants had knowledge of plaintiff's stock ownership. The testimony of the company accountant that he knew of the certificates and asked plaintiff if he owned or had any interest in them indicates an attempt by the company to determine whether there was such a claim. Even if, as the plaintiff testified, these conversations did not take place, plaintiff's silence was sufficient to induce the company's belief that he was not a stock owner and their reliance on that belief, including the filing of income tax returns under the Subchapter S election requiring the consent of all shareholders. The tax question alone could cause serious complications were plaintiff recognized as a shareholder since the Subchapter S election might be set aside and result in substantial tax liability for the corporation.

The plaintiff also argues that laches is inapplicable where the parties are close relatives because of the natural reluctance to break apart families. *(Cross v. Jones* (1927), 327 Ill. 538, 158 N.E. 694; *Lutyens v. Ahlrich* (1923), 308 Ill. 11, 139 N.E. 50.) We do not feel constrained to apply this rule either blindly or absolutely. On the record before us, it is clear that the plaintiff's silence was not motivated by trust in and loyalty to his family.

■■  Laches is applied by equity courts to protect a party against stale

claims where he has changed his position without the knowledge of the possible claim and where to permit the belated assertion of that claim would be inequitable. The plaintiff's delay in demanding his rights to stock ownership combined with the detrimental impact upon defendants which would be caused by granting him those rights after 32 years of silence requires the application of laches in this case.

The trial court without explanation found for plaintiff on Count I and ordered defendants to pay plaintiff $50,000 for the surrender of endorsed certificates. There was no specific finding that plaintiff was a shareholder or that he was entitled to the amount of relief requested. Because of our decision that the doctrine of laches bars plaintiff's claims, the judgment in favor of plaintiff on Count I must be reversed.

■■ An affirmative determination of plaintiff's status as a shareholder is a *sine qua non* to judgment in favor of plaintiff on Count II for recognition of preemptive rights and on Count III for an accounting of mismanaged funds. The trial court's dismissal of Counts II and III was, therefore, proper.

This cause is remanded with directions to enter judgment for the defendants and against the plaintiff on all three counts.

Affirmed in part, reversed in part, and remanded with directions.

BURKE and O'CONNOR, JJ., concur.