SADIE MARY SENESE, as Ex'x of the Estate of Dominic J. Senese, Deceased, Plaintiff-Appellant, v. CLIMATEMP, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—96—2680

Opinion filed June 25, 1997.

Murphy & Boyle, Chartered, of Chicago (Robert D. Boyle and Mark R. Valley, of counsel), for appellant.

Richard J. Nogal and Joelle T. Marasco, both of Lillig & Thorsness, Ltd., of Oak Brook, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Dominic J. Senese, brought suit against defendants Climatemp, Inc. (Climatemp), John W. Comforte, Thomas E. Comforte and Victor Comforte. Plaintiff alleged that he owned stock in Broadway Sheet Metal Works, which later became Climatemp, and agreed to sell his stock in the company but never consummated that agreement. Specifically, plaintiff alleged breach of contract and violations under the Uniform Commercial Code—Investment Securities Act (810 ILCS 5/8—101 *et seq.* (West 1992)) and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)). In addition, plaintiff sought a constructive trust, *mandamus* and an accounting.

Plaintiff appeals from the trial courts decision granting defendants motion to dismiss based on sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1992)), and from earlier orders in which the trial court denied plaintiff's motion to compel production of documents and to require defendants to answer deposition questions. Plaintiff also appeals from the trial court's award of sanctions under Supreme Court Rule 137 (134 Ill. 2d R. 137).

On appeal, plaintiff contends that: (1) the trial court's denial of plaintiff's discovery requests concerning the *"bona fides"* of the alleged stock transaction was reversible error; (2) the trial court erred in granting defendants' motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)) based upon standing, *laches*, statute of limitations and the Uniform Stock

Transfer Act (Ill. Rev. Stat. 1959, ch. 32, par. 416 *et seq.*); (3) the trial court's dismissal of the second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) was reversible error; and (4) the trial court abused its discretion in granting defendants' motion for sanctions under Supreme Court Rule 137 (134 Ill. 2d R. 137).

Defendants cross-appeal and contend that: (1) the trial court abused its discretion by granting plaintiff's motion to substitute the executrix and failing to dismiss the action for plaintiff's failure to comply with statutory time limits; (2) the trial court abused its discretion by denying the defendants' motion to strike plaintiff's answer to defendants' first set of interrogatories and dismiss plaintiff's complaint with prejudice as a sanction; and (3) the trial court abused its discretion by reducing the amount of attorney fees awarded to defendants.

BACKGROUND

On September 20, 1989, plaintiff, claiming shareholder status, filed a complaint for *mandamus* to compel production of the corporate minute books and shareholder records of Climatemp and for other relief. Plaintiff alleged that he was a stockholder of Climatemp.

Climatemp, an Illinois corporation engaged in the heating and ventilating business, was originally known as Broadway Sheet Metal Works, Inc. (Broadway), and was incorporated as an Illinois corporation on May 1, 1958. The name of the corporation was changed to Climatemp, Inc., on February 2, 1960. The original incorporators and shareholders of the company were L. Anton Moody, Victor Comforte and Dominic Senese.

In his first amended complaint, plaintiff alleged that, in 1960, Victor Comforte and Dominic Senese contemplated transferring their respective shares in the corporation to Expressway Terminals (Expressway) in order to obtain borrowing ability and business credibility. Anthony Sicilia, the president of Expressway, was a good friend of both Victor and Dominic. Plaintiff alleged that he, Victor and Anthony signed a letter of intent to proceed with the sale. The letter of intent provided that Expressway would pay an initial payment and then 10 equal installments, with the purchase to be completed in 10 years. The letter of intent also provided that a formal complaint relating to the purchase, with arrangements for holding the shares of stock in escrow, would be drawn up and executed no later than May 1, 1960. Plaintiff alleged that he still owned his stock in Climatemp because no formal contract or escrow agreement was ever created and that he was never paid for his stock.

Defendants maintained that plaintiff was an original shareholder of the company but sold his shares in the company to Expressway. Defendants argued that plaintiff was not a shareholder of record and, therefore, had no right to inspect the corporation's books and records. Along with motions to dismiss, defendants filed an affidavit by corporate treasurer Thomas E. Comforte denying plaintiff's stock ownership. With subsequent motions, defendants presented several exhibits that purported to establish that Dominic Senese had sold his stock to Expressway on January 4, 1960. Defendants' exhibits included: the letter of intent signed by Victor Comforte, Dominic Senese and Anthony Sicilia; Dominic Senese's unsigned stock certificate number 3 for stock in Broadway that was issued to Senese on May 3, 1958, and had the word "cancelled" handwritten on its face; a corporate ledger memorializing a transfer of 50 shares from Dominic Senese to Expressway that contained three names that were crossed out; and an undated but signed assignment separate from the certificate assigning Dominic Senese's shares in Broadway to Expressway. The trial court dismissed plaintiff's amended complaint and plaintiff appealed.

In *Senese v. Climatemp, Inc.*, 222 Ill. App. 3d 302, 582 N.E.2d 1180 (1991), the appellate court reached several conclusions. The appellate court concluded, *inter alia*, that no exhibit established whether the parties actually completed the sale of Dominic Senese's shares in Climatemp as no exhibit demonstrated that the conditions precedent set forth in the letter of intent (*i.e.*, to pay an initial payment of $1,000 and the balance over 10 years; to draw up a formal contract by May 1, 1960; and to have the stock held in escrow until the sale was complete) were satisfied. 222 Ill. App. 3d at 312. The appellate court therefore held that the trial court erred by relying on the exhibits in plaintiff's complaint and finding them dispositive of the issue of plaintiff's shareholder status. 222 Ill. App. 3d at 312.

The appellate court also concluded that the trial court properly dismissed plaintiff's claim for a constructive trust but remanded the case so plaintiff could be allowed to amend following what the appellate court referred to as "limited discovery." 222 Ill. App. 3d at 315. The court stated in pertinent part:

> "Plaintiff has alleged a fraud occurred in which defendants participated, and has alleged that the corporate officers and directors breached their fiduciary duty and participated in a fraud perpetrated on plaintiff. ***
>
> *** [P]laintiff has not alleged he notified the corporation directors and officers at any time to put them on notice that Expressway Terminals, Inc., was improperly claiming shareholder rights nor

has he alleged any facts to support his allegation that corporate officers and directors somehow participated in his lack of stockholder status. ***

*** Plaintiff alleged merely that he owned stock and Victor Comforte now contends he does not. Fraud must be proven; it cannot be presumed. [Citation.] Plaintiff has not alleged sufficient facts in support of a fraud which would merit imposition of a constructive trust but should be permitted discovery and the opportunity then to amend his complaint to correct its deficiencies." 222 Ill. App. 3d at 315-16.

The appellate court also responded to defendants' argument that *laches* barred plaintiff's complaint. Citing *People ex rel. Casey v. Health & Hospitals & Governing Comm'n*, 69 Ill. 2d 108, 370 N.E.2d 499 (1977), the court concluded that plaintiff should be given an opportunity to amend his complaint to set forth a valid excuse to explain the obvious delay in pursuing his claim. The appellate court also held that the trial court erroneously barred plaintiff from engaging in discovery as to the documents presented by defendants. The appellate court stated in pertinent part:

"We find the trial judge committed such an error here. Plaintiff alleged he was a stockholder and defendants denied the stock ownership. Exhibits attached to both plaintiff's amended complaint and defendants' answer included altered stock certificates, changed corporate records, strike marks over several official documents and other inconsistencies which beg for a clearer explanation. The purpose of discovery is to enable counsel to better prepare and evaluate their case. [Citation.] We believe limited discovery will cast light on unclear portions of the complaint and on the circumstances surrounding the creation of the challenged exhibits." 222 Ill. App. 3d at 320.

Dominic Senese died on January 29, 1992. On March 9, 1993, the trial court granted Sadie Mary Senese's motion for substitution as plaintiff. Thereafter, following the appellate court's directive in *Senese*, the parties commenced discovery. A number of documents were produced. Several parties were deposed, including: Victor Comforte, defendant and chairman of Climatemp; John Comforte, defendant and president of Climatemp; Thomas Comforte, defendant and corporate secretary of Climatemp; Harold Tsukuno, Dominic Senese's personal accountant; and Thomas Roche, former corporate counsel to Climatemp and Dominic Senese's estate planning counsel. In addition, several of Dominic Senese's personal friends and his personal attorney were deposed. Of particular relevance to the issues presented were the depositions of Victor Comforte and Thomas Roche.

Victor Comforte is the only surviving witness to the meetings in

1960 that allegedly resulted in the transfer of Dominic Senese's stock. In his deposition, Victor testified that, in 1959, the corporation lost business as the result of negative publicity surrounding an investigation of the corporation by the United States Department of Defense. Victor and Dominic transferred their shares of Climatemp to Expressway in order to raise an infusion of capital for the corporation. Victor also testified that, initially, he and Dominic considered selling their shares to L. Anton Moody, the president of Broadway at the time, C.R. James, an employee at Broadway at the time, and R. Konicheck, the corporation's bookkeeper at the time. However, the proposed sale was halted as it was determined that the sale of the shares to these three would not remedy the corporation's financial crisis. Thus, Victor and Dominic turned to their mutual friend, Anthony Sicilia, who, at that time, was the president of Expressway. Victor testified that both he and Dominic sold their shares in Broadway to Expressway and were paid in full in $2^1/2$ years with corporate checks from Expressway. Victor had no further affiliation with Climatemp until he returned to the corporation as an employee in 1963.

Thomas Roche was an associate attorney with the law firm of Halfpenny & Hahn in the 1960s, and he worked under Harold Halfpenny as corporate counsel for Climatemp through 1975. Thereafter, Roche no longer represented Climatemp but was Dominic Senese's estate planning counsel. Roche testified in his deposition that he destroyed all of Halfpenny & Hahn's files regarding Climatemp sometime in the 1980s even though he knew at the time that Dominic Senese claimed an ownership interest in Climatemp. Roche also testified that, in the 1960s, he followed a typical procedure to cancel and transfer ownership of a stock. He would cancel the certificate, keep track of the stock's history sheet and issue a new certificate when requested. He would also write "cancelled" across the face of the certificate. Regarding Dominic Senese's share of stock in Climatemp, Roche identified his handwriting of the word "cancelled" across the face of Dominic Senese's stock certificate number 3 and testified that he would not have cancelled the shares if he had believed the transfer was invalid. Roche also testified that he was not aware of any fraud connected to the transfer of Senese's stock.

In addition to the depositions, defendants also produced: an assignment separate from certificate that transferred Victor Comforte's shares to Expressway; resignations of Victor Comforte and Dominic Senese from the board of directors of Broadway; corporate ledgers indicating the transfer of Dominic Senese's stock to Expressway; and various board meeting minutes and annual reports that indicated

that Dominic Senese was never an officer or director of Climatemp after 1960.

During discovery, plaintiff filed various motions to compel production of documents and defendants filed various motions attacking plaintiff's discovery responses. As a result, the trial court barred discovery of information unrelated to the January 4, 1960, transaction or Dominic Senese's alleged ownership in Climatemp.

Plaintiff filed her second amended complaint on January 13, 1995. Defendants filed motions to dismiss the complaint pursuant to sections 2—619 and 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1992)). In their section 2—619 motion to dismiss, defendants argued that the evidence elicited in discovery conclusively showed that Dominic Senese was no longer a shareholder of Climatemp and that the claims asserted in the second amended complaint were barred by *laches* and the applicable statutes of limitations. Defendants' section 2—615 motion to dismiss pointed out the legal deficiencies in each of the plaintiff's claims. The trial court granted defendants' motions to dismiss on all grounds and dismissed plaintiff's second amended complaint with prejudice. Thereafter, defendants moved for sanctions against plaintiff under Supreme Court Rule 137. 134 Ill. 2d R. 137. The trial court granted defendants' request for sanctions and directed defendants to file their petition for fees. Following an evidentiary hearing, the trial court awarded attorney fees to defendants in the amount of $30,000 and costs of $1,421.50.

We affirm in part and reverse in part.

ANALYSIS

I

Plaintiff first contends that the trial court erroneously denied plaintiff's discovery requests. On December 29, 1993, plaintiff filed a motion to compel production of documents. The motion asserted that defendants willfully failed to provide conclusive documentation of Dominic Senese's sale of stock. Plaintiff sought evidence such as payment records or directions to an escrow agent regarding the delivery of stock to Expressway. In an agreed order, defendants agreed to produce all documents and answer all deposition questions relating to Victor Comforte's transfer of shares in Climatemp. However, in two separate orders, the trial court denied plaintiff's motion in all other respects and ruled that the parties could not engage in discovery or ask deposition questions about information unrelated to the January 4, 1960, transaction or Dominic Senese's alleged ownership in Climatemp.

Without citation to authority, plaintiff now argues that the trial court erred in prohibiting discovery of events that occurred after January 4, 1960. Plaintiff argues that such information was relevant in that payouts to Dominic Senese for his stock were to have been executed in installment payments over a 10-year period and Victor Comforte testified that he received his payments over a $2^1/_2$-year period. Plaintiff contends that defendants refused to explain what happened with Victor Comforte's stock after January 4, 1960, and refused to state what happened after Dominic Senese's stock was purportedly transferred to Expressway.

Defendants respond that they produced all relevant and existing information concerning Expressway's purchase of stock from Dominic Senese and Victor Comforte in 1960. Defendants also contend that information such as purchasers of Climatemp's shares after 1960 are outside the scope of the "limited discovery" directed by the appellate court in *Senese* and that the trial court properly restricted discovery to matters related to the January 4, 1960, transaction.

■ Supreme Court Rule 214 confers wide discretion on the trial judge in control of pretrial discovery. 134 Ill. 2d R. 214; *Elmore v. Blume*, 31 Ill. App. 3d 643, 648, 334 N.E.2d 431 (1975). Our review of the record shows that, despite the court's order, plaintiff received a substantial amount of information about events that occurred years after 1960. In particular, both Victor Comforte and Thomas Roche were questioned extensively in their depositions about a variety of issues spanning from 1958 to the mid 1980s. Thus, we cannot see how plaintiff was prejudiced by the trial court's order denying her motion to compel. See *Elmore*, 31 Ill. App. 3d at 648. We therefore affirm the orders of the trial court denying plaintiff's motion to compel.

## II

■ We will next address the issue of *laches* as it is dispositive of plaintiff's appeal. Plaintiff contends that the trial court erroneously dismissed the second amended complaint based on *laches*. *Laches* is an equitable principle that bars an action where, because of delay in bringing suit, a party has been misled or prejudiced or has taken a course of action different from what the party otherwise would have taken. *Nancys Home Of the Stuffed Pizza, Inc. v. Cirrincione*, 144 Ill. App. 3d 934, 940, 494 N.E.2d 795 (1986); *Patrick Media Group, Inc. v. City of Chicago*, 255 Ill. App. 3d 1, 7, 626 N.E.2d 1066 (1993). A defendant must show prejudice or hardship, rather than mere passage of time, and must demonstrate that the delay induced the party to adversely change its position. *Patrick*, 255 Ill. App. 3d at 7. Furthermore, to raise the defense of *laches* the party must plead that

the opposing party had prior knowledge of the facts giving rise to the claim (*Patrick*, 255 Ill. App. 3d at 7; *Zegers v. Zegers, Inc.*, 38 Ill. App. 3d 546, 551, 348 N.E.2d 210 (1976)), yet failed to proceed in a timely manner. *Senese*, 222 Ill. App. 3d at 318.

■ In *Senese*, defendants argued that plaintiff had failed to set forth a reasonable excuse in his complaint for the delay in bringing suit. 222 Ill. App. 3d at 318. Citing *People ex rel. Casey v. Health & Hospitals & Governing Comm'n*, 69 Ill. 2d 108, 370 N.E.2d 499 (1977), the appellate court held that, where an unreasonable delay appears on the face of a complaint, a plaintiff has an affirmative duty to set forth a valid excuse to explain the delay. *Senese*, 222 Ill. App. 3d at 319. The appellate court concluded that plaintiff had failed to set forth such an excuse but held that plaintiff should be allowed to amend his complaint to allege facts that would explain the delay. 222 Ill. App. 3d at 319. Plaintiff now asserts that well-pled facts in the second amended complaint allege that Dominic Senese was not aware that he was not a shareholder of Climatemp until Victor Comforte informed him so at a meeting in the late 1980s. Defendants respond that plaintiffs excuse is inadequate. We agree.

Defendants cite *Zegers v. Zegers, Inc.*, 38 Ill. App. 3d 546, 348 N.E.2d 210 (1976), which we believe is instructive. In *Zegers*, plaintiff was issued shares of stock in the defendant corporation in 1934. In 1938, plaintiff's shares were transferred to a third party on the books and records of the corporation and a new certificate was issued to the new shareholder. 38 Ill. App. 3d at 549. More than 30 years later after his initial purchase of the stock in the corporation, the plaintiff brought suit against Zegers, Inc., to determine his shareholder rights and to recover dividends and other funds to which he was allegedly entitled.

The appellate court held that plaintiff's claim was barred by *laches*. The court rejected plaintiff's contention that he did not learn of the dispute over his shares until he confronted the corporation's president in 1971. 38 Ill. App. 3d at 551. The appellate court noted that, even though plaintiff may not have known specific facts regarding his status as a shareholder, the circumstances were such that a reasonable person would be expected to make inquiry regarding the circumstances. 38 Ill. App. 3d at 551. The court concluded that the plaintiff made no attempt to assert his right to shareholder status even though he was working for the corporation in a position of authority. The court stated in pertinent part:

> "Though the plaintiff may have been justified in not inquiring concerning dividends prior to 1938, while the corporation was apparently struggling, his failure to inquire concerning the lack of

dividends and the absence of other communications despite his firsthand observations of the phenomenal growth of the company and the changes in its officers and directors in the next 32 years is inconsistent with his claim that he was an owner." 38 Ill. App. 3d at 552-53.

The appellate court also held that the defendants would be prejudiced by plaintiff's failure to assert his claim in that, during the time that had elapsed since plaintiff first purchased his stock, Zegers, Inc., had grown substantially. 38 Ill. App. 3d at 555. The corporation had borrowed several million dollars to finance its expansion. The defendants labored, took risks and incurred obligations to insure the success of the company. 38 Ill. App. 3d at 555. Furthermore, plaintiff's father and brother, who had been involved in the original issuance and subsequent transfer of the stock, were deceased. The court concluded that the plaintiff's 32-year delay in asserting his shareholder rights and obvious detriment to the defendant caused by the delay barred his claims on the ground of *laches*. 38 Ill. App. 3d at 556.

The facts in *Zegers* are similar to the facts in the instant case. There is no evidence in the record that plaintiff exercised due diligence to assert his shareholder rights prior to the filing of this lawsuit in 1989. Plaintiff offers no reasonable excuse for not pursuing his claim earlier. Furthermore, we agree with defendants that they would be prejudiced if plaintiff was allowed to pursue his claim. Many records have been destroyed. Plaintiff's estate was unable to locate any documents relating to Climatemp. Roche testified that he destroyed Halfpenny & Hahn's remaining records of Climatemp. More importantly, many of the witnesses who had firsthand knowledge of the transfer of Dominic Senese's stock are deceased. Dominic Senese, Anthony Sicilia, the president of Expressway Terminals and the transferee of Dominic's stock, and Harold Halfpenny, corporate counsel to Broadway Sheet Metal Works in 1960, are all deceased. Because of the death of these witnesses, we cannot say that defendants would not be prejudiced. See *Zegers*, 38 Ill. App. 3d at 555; *Hull v. Illinois State Bank*, 129 Ill. App. 2d 203, 262 N.E.2d 603 (1970) (abstract of op.). In addition, For these reasons, we hold that plaintiff's claim is barred by *laches*.

### III

■ Plaintiff also contends that the trial court erred in dismissing plaintiff's complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1992)). Plaintiff argues that her complaint provides well-pled allegations that support the various remedies sought in her complaint. We disagree. In our view, plaintiff has not set forth sufficient evidence to support her al-

legations. Rather, deposition testimony and the documents produced by defendants indicate that Dominic Senese transferred his stock to Expressway Terminals.

## IV

Plaintiff also argues that the trial court abused its discretion in granting defendants' motion for sanctions under Supreme Court Rule 137 (134 Ill. 2d R. 137).

In their motion for sanctions against plaintiff, defendants asserted that plaintiff's second amended complaint and motion for summary judgment was frivolous and that plaintiff should have chosen not to proceed with the second amended complaint. The trial court granted defendants' motion. The court agreed with defendants and noted that there was no explanation in plaintiff's second amended complaint for the 30-year delay in plaintiff's initiation of litigation, that the evidence compiled during discovery indicated that Dominic Senese transferred his shares in 1960, and that any claims that Dominic did not learn about the transfer until the mid 1980s were proven false by discovery. The trial court also stated that plaintiff failed to join Expressway Terminals as an indispensable party, as requested by the appellate court, and failed to explain the absence of Expressway Terminals as a party to the suit. The trial court also stated that no facts supported any of the plaintiff's allegations of fraud and that identical fraud allegations had previously been dismissed. The court concluded that sanctions were appropriate under Supreme Court Rule 137 in that the filing of the second amended complaint caused unnecessary delays and increased the cost of litigation.

Supreme Court Rule 137 allows a court to impose sanctions against a party or counsel who files a pleading or motion that is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or is interposed for any improper purpose. 134 Ill. 2d R. 137. The purpose of the rule is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law. *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074, 651 N.E.2d 601 (1995). The rule is not intended to penalize litigants for their lack of success; rather, its aim is to restrict litigants who plead frivolous or false matters without any basis in the law. *Fremarek*, 272 Ill. App. 3d at 1074; *Fischer v. Brombolich*, 246 Ill. App. 3d 660, 664, 616 N.E.2d 743 (1993). The determination of whether to impose sanctions rests within the sound discretion of the trial court and that de-

cision is entitled to great weight and will not be disturbed on review absent an abuse of discretion. *Bennet & Kahnweiler, Inc. v. American National Bank & Trust Co.*, 256 Ill. App. 3d 1002, 1007, 628 N.E.2d 426 (1993). A trial court is said to exceed its discretion regarding the imposition of sanctions under Rule 137 only where no reasonable person would take the view adopted by it; if reasonable people would differ as to the propriety of the court's action, a reviewing court cannot say that the trial court exceeded its discretion. *Board of Library Trustees v. Cinco Construction, Inc.*, 276 Ill. App. 3d 417, 426, 658 N.E.2d 473 (1995); *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334, 570 N.E.2d 361 (1991).

■ In our view, the trial court abused its discretion in granting defendants' motion for sanctions against the plaintiff. We agree with the trial court that plaintiff did not provide an adequate excuse to defendants' defense of *laches*. However, we cannot say that plaintiff should not have filed her second amended complaint. It is possible that plaintiff filed the complaint pursuant to a good-faith belief that subsequent information would lead to a success on the merits. Plaintiff should not be sanctioned for such a belief. Accordingly, we reverse the trial court's orders granting defendants' motion for sanctions.

## V

Our final consideration for review is defendants' cross-appeal in which defendants argue that the trial court abused its discretion by: (1) granting plaintiff's motion to substitute the executrix; (2) denying the defendants' motion to strike plaintiff's answers to defendants' interrogatories and for failing to dismiss plaintiff's complaint accordingly; and (3) by reducing the amount of attorney fees awarded to defendants.

Regarding plaintiff's motion to substitute an executrix, defendants contend that Dominic Senese's death was suggested of record and incorporated by agreement in an order entered by the trial court on May 22, 1992, and that the motion for substitution, although due to be filed within 90 days by August 20, 1992, was not filed until December 8, 1992, which was 200 days after the suggestion of death on the record.

■ Under section 2—1008(b) of the Illinois Code of Civil Procedure (735 ILCS 5/2—1008(b) (West 1992)), if a party to an action dies and the action is one that survives, the proper party or parties may be substituted by order of the court upon motion. If a motion to substitute is not filed within 90 days after the death is suggested of record, the statute provides that the action *may* be dismissed as to

the deceased party. 735 ILCS 5/2—1008(b) (West 1992). The language of this section uses the permissive "may" rather than the mandatory "shall"; therefore, the court has discretion as to whether to dismiss the action. *McGill v. Lazzaro*, 62 Ill. App. 3d 151, 152-53, 279 N.E.2d 16 (1978).

The Illinois Supreme Court has held that, when determining whether there was error in permitting a party substitution under section 2—1008(b), the overriding consideration on appeal is whether substantial justice is being done between the litigants and whether it was reasonable, under the circumstances, to compel the other party to proceed on the merits. *Sickler v. National Diary Products Corp.*, 67 Ill. 2d 229, 234, 367 N.E.2d 674 (1977). Thus, the ultimate question on review is whether the trial court properly exercised its discretion in an attempt to serve justice. *Baltz v. McCormack*, 66 Ill. App. 3d 76, 77, 383 N.E.2d 643 (1978). In *Sickler*, the supreme court reversed an order of dismissal relative to an untimely filed substitution motion. The court analyzed whether "substantial justice" had been done and concluded that, even though the motion to substitute was not timely, the record showed no prejudice to the opposing party because of the delay. *Sickler*, 67 Ill. 2d at 234.

■ Similarly, in the case *sub judice*, there is no indication in the record, nor did defendants argue, that they were prejudiced by plaintiff's delay in filing the motion to substitute. We cannot conclude that justice was not served by the trial court's decision or that the trial court abused its discretion in allowing the substitution.

■ Relative to defendants' motion to strike plaintiff's answer to defendants' interrogatories, defendants argue that plaintiff ignored court orders and was allowed to be dilatory and uncooperative in conducting discovery, in violation of Supreme Court Rule 219(c), which allows a trial court to enter a just order where a party unreasonably refuses to comply with discovery or a discovery order (134 Ill. 2d R. 219(c)). Defendants argue that the trial court abused its discretion in denying their request to dismiss plaintiff's complaint with prejudice for plaintiff's conduct during discovery. Specifically, defendants argue that plaintiff failed to comply with Supreme Court Rule 213(d) (134 Ill. 2d R. 213(d)), which requires a party to serve a sworn answer or an objection to an interrogatory. Defendants point to plaintiff's filing of an unverified response to defendants' first request for production of documents and an unsigned answer to defendants' first set of interrogatories. The trial court characterized the plaintiff's answers as nonresponsive and ordered the plaintiff to answer interrogatories and complete discovery within 21 days. Thereafter, plaintiff filed a verified answer to the interrogatories that

defendants contend was evasive and nonresponsive. Defendants moved to strike these answers and requested sanctions. Their motion was denied.

The imposition of sanctions for noncompliance with discovery is a matter generally left to the sound discretion of the trial court, and its decision will not be reversed absent an abuse of discretion. *Donner v. Deere & Co.*, 255 Ill. App. 3d 837, 841, 628 N.E.2d 1171 (1994). However, the dismissal of an action as a sanction is a drastic remedy that should only be used as a last resort when all other enforcement powers at the court's disposal have failed to advance the litigation. *Donner*, 255 Ill. App. 3d at 841; see also *Gallo v. Henke*, 107 Ill. App. 3d 21, 27, 436 N.E.2d 1068 (1982) (dismissal with prejudice was too drastic after the plaintiff failed to appear for her deposition only once).

Defendants cite *Cruz v. Columbus-Cuneo-Cabrini Medical Center*, 264 Ill. App. 3d 633, 636 N.E.2d 908 (1994), to support their position that dismissal with prejudice would have been an appropriate sanction for plaintiffs' failure to comply with discovery orders. In *Cruz*, the plaintiffs failed to appear at two hearings, failed to comply with four discovery orders, failed to file a timely motion to vacate and then failed to pursue that motion within a reasonable time. The appellate court characterized plaintiffs' conduct as a pattern of neglect and disregard for the court's authority and upheld the trial court's dismissal of the plaintiffs' complaint as a sanction for the plaintiffs' noncompliance. The appellate court noted that, although dismissal with prejudice can be a drastic sanction in some cases, it will be appropriate when a party demonstrates unwarranted disregard for a court's authority or when a party exhibits "deliberate and contumacious disregard for discovery orders." 264 Ill. App 3d at 645.

*Cruz* is inapposite to the instant case. Here, we cannot say that plaintiff's alleged conduct demonstrated a deliberate disregard for the court. Moreover, the trial court had sufficient means at its disposal by which to advance the litigation as was evidenced by the court's order to plaintiff to answer defendants' interrogatories and complete discovery within 21 days. We cannot see how this order did not remedy the situation. Therefore, we affirm the trial court's order denying defendants' motion to strike plaintiff's answers to interrogatories and requesting sanctions.

Finally, we see no need to address defendants' contention that the trial court abused it discretion in its award to defendants of attorney fees for Supreme Court Rule 137 sanctions. We have reversed the trial court's order of sanctions against the plaintiff. Accordingly, we reverse that part of the trial court's order granting attorney fees to defendants in the amount of $31,421.59.

For the foregoing reasons, we affirm in part and reverse in part.

Affirmed in part and reversed in part.

GORDON and LEAVITT, JJ., concur.