**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 20, 2026

Antranig Garibian
GARIBIAN LAW OFFICES, P.C.
1523 Concord Pike, Suite 400
Wilmington, DE 19803

Ryan D. Stottmann
Cassandra L. Baddorf
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19801

> Re: *Gary T. Turner v. Lam Research Corporation*,
> C.A. No. 2024-1308-KSJM

Dear Counsel:

This letter decision resolves the defendant's motion to dismiss.[1] The plaintiff claims that the defendant issued him stock in 1988. But when the plaintiff went to sell that stock over 30 years later, he learned that the defendant had no record of his stock ownership. The plaintiff sued for a judgment declaring him a stockholder of the defendant.

The defendant has moved to dismiss the complaint, arguing that the complaint is time-barred. According to the defendant, the plaintiff was on inquiry notice for decades that the company did not view him as a stockholder for two reasons: he never received stockholder communications, although the defendant is a public company; and he never received dividends, although the defendant has issued dividends for the past eight years.

---

[1] 2024-1308-KSJM, Docket ("Dkt.") 6.

The defendant's points prevail. Both facts are sufficient to put a person of ordinary intelligence and prudence on inquiry notice that the individual's stockholder status was in question. The motion to dismiss is granted.

## I. FACTUAL BACKGROUND

The facts are drawn from the Verified Complaint (the "Complaint") and documents it incorporates by reference.[2]

David Lam formed Defendant Lam Research Corporation ("Lam" or the "Company") in 1980 to specialize in the semiconductor industry. The Company went public in 1984. In 1989, the Company redomiciled from California to Delaware through a merger (the "1989 Merger").[3] The Company's stock trades on the NASDAQ stock exchange. The Company has held annual meetings each year and mails its stockholders a notice providing instructions for stockholders to electronically access proxy materials (or to request paper copies). Before electronic access was available, the Company mailed copies of its proxy materials to stockholders. The Company has issued an annual dividend to stockholders since 2014.

Gary T. Turner worked for the Company from 1984 to 1989 as the Southwest Area Process Manager.[4] Turner filed this suit on December 17, 2024. Turner passed

---

[2] Dkt. 1 (Compl.).

[3] *Id.* ¶¶ 18–19.

[4] *Id.* ¶ 3.

away after he filed this action and his estate ("Plaintiff") has been substituted as the plaintiff.[5]

Turner received a bonus in 1988 of 2,375 shares of Lam's common stock. According to Turner, "the stock certificate was delivered to him in the mail, and other original employees received stock certificate(s) as well."[6] Due to stock splits, those 2,375 shares would now represent 106,880 shares of Company common stock.[7] When Turner received his bonus in 1988, the stock had a value of approximately $3.00 per share, valuing his total holdings at approximately $7,125.[8] Based on recent trading prices, those shares are today worth approximately $25 million.

The Complaint states that Turner had no interest in selling the shares at the time, and he "filed the stock away" for that reason.[9] In briefing, Plaintiff stated that Turner "forgot" he held the shares for decades.[10] During oral argument, Plaintiff's counsel stated that Turner was holding the shares for retirement.[11]

Turner learned that the Company had no record of his shares in January 2021. Turner had deposited his shares with a stockbroker. When the broker attempted to sell the shares, the broker was informed by Lam's transfer agent Computershare, Inc.

---

[5] *See* Dkt. 18.

[6] Compl. ¶ 14.

[7] *Id.* ¶ 24.

[8] *Id.* ¶ 25.

[9] *Id.*

[10] Dkt. 13 ("Pl.'s Answering Br.") at 5.

[11] Dkt. 20 ("H'rg Tr.") at 27:20–22.

that there was no record of Turner's stock ownership. Computershare investigated Turner's claims and found that, on November 16, 1989, the Company's former transfer agent filed a form used to denote the loss of a stock certificate.[12] The "Lost Securities Form" lists the date of loss as "11-16-89"—around the time of the 1989 Merger—and the type of loss as "other."[13] The CUSIP number, certificate/serial number, and the number of shares listed on the Lost Securities Form match those on Turner's original stock certificate.[14]

Plaintiff speculates that the Company filed Turner's shares as "lost" because he did not surrender his stock certificate to Lam in the 1989 Merger.[15] But Plaintiff argues that he was not required to surrender his stock certificate under the Agreement and Plan of Merger ("Merger Agreement") governing the 1989 Merger.[16] Section 3.4 of the Merger Agreement states that each stockholder may elect to surrender his shares.[17] But if he does not, his stock will be recognized as that of the post-merger Company.[18]

Plaintiff asserts three counts. In Count I, Plaintiff requests declaratory and injunctive relief for issuance of a new stock certificate pursuant to 8 *Del. C.* § 168. In

---

[12] *Id.* ¶ 39; *id.*, Ex. F ("Lost Securities Form").

[13] *See* Lost Securities Form.

[14] *Compare* Compl., Ex. A, *with* Lost Securities Form.

[15] Pl.'s Answering Br. at 2–3.

[16] Compl. ¶ 22; *id.*, Ex. B ("Merger Agreement").

[17] Merger Agreement at 4.

[18] *Id.*

Count II, Plaintiff claims that the Company converted his stock. In Count III, Plaintiff claims breach of contract and breach of the implied covenant of good faith and fair dealing. The Company moved to dismiss the claims on March 12, 2025. The parties briefed the motion and the court heard oral argument on January 28, 2026.[19]

## II. LEGAL ANALYSIS

The Company has moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[20] When considering a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[21] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[22]

The Company argues that Plaintiff's claims are barred by laches, an equitable doctrine derived from the maxim that "equity aids the vigilant, not those who slumber

---

[19] *See* Dkt. 11 ("Def.'s Opening Br."); Pl.'s Answering Br.; Dkt. 14 ("Def.'s Reply Br.").

[20] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[21] *Id.* (citing Savor*, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[22] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Georgia S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018) (citing *Clinton v. Enter. Rent-A-Car* Co.*, 977 A.2d 892, 895 (Del. 2009)).

on their rights."[23]   Claims filed after the applicable statute of limitations are "considered presumptively untimely, and presumptively untimely claims may be barred under laches at the pleadings stage" unless a tolling doctrine applies.[24]   Thus, "the court may dismiss a complaint on grounds of laches if 'it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it.'"[25]

Each of Plaintiff's claims is subject to a three-year statute of limitations.  Count I, seeking to compel issuance of a stock certificate pursuant to 8 *Del. C.* § 168, is a claim "based on statute" and thus must be brought within three years of accrual.[26] Count II, for conversion, is similarly subject to the three-year statute of limitations set forth in 10 *Del. C.* § 8106.[27]   And Count III, for breach of an express or implied contract, is also subject to a three-year statute of limitations.[28]   Plaintiff's claims accrued over three years before Turner filed this suit, when the Company marked the

---

[23] *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009) (quoting *Pomeroy's Equity Jurisprudence* §§ 418, 419 (5th ed. 1941)).

[24] *In re Ebix, Inc. S'holder Litig.*, 2014 WL 3696655, at *8 (Del. Ch. July 24, 2014).

[25] *Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at *11 (Del. Ch. Oct. 28, 2022) (quoting *Reid*, 970 A.2d at 183).

[26] *See* 10 *Del. C.* § 8106(a) ("[N]o action based on a statute . . . shall be brought after the expiration of 3 years from the accruing of the cause of action[.]").

[27] *See Saunders v. Lightwave Logic, Inc.*, 2024 WL 4512227, at *6 (Del. Super. Ct. Oct. 17, 2024) (applying three-year statute of limitations to claim for conversion of stock).

[28] *See AssuredPartners of Virginia, LLC v. Sheehan*, 2020 WL 2789706, at *12 (Del. Super. Ct. May 29, 2020) ("Under Delaware law, claims for breach of contract and breach of the implied covenant are subject to a three-year statute of limitations.").

stock as lost. Thus, Plaintiff's claims are time-barred unless a tolling doctrine applies.

Defendant argues that no tolling doctrine salvages Plaintiff's claims because Turner was on inquiry notice of his disputed status as a Lam stockholder for years, if not decades.

"The Delaware courts recognize three doctrines that may toll the statute of limitations: (1) inherently unknown injuries, (2) fraudulent concealment, and (3) equitable tolling following a breach of fiduciary duties."[29] But actual notice or inquiry notice cuts off any tolling period.[30] A plaintiff is on inquiry notice of a claim when he "becomes aware of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, could lead to the discovery of the injury."[31] Tolling does not extend beyond the point when the plaintiff "was objectively aware, or should have been aware, of facts giving rise to the wrong."[32]

According to the Complaint, Turner acquired stock in the Company 37 years ago. The Company was a public company that entire time and regularly

---

[29] *Murray v. Rolquin*, 2023 WL 2421687, at *10 (Del. Ch. Mar. 9, 2023) (quoting *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *17 (Del. Ch. Dec. 1, 2009)).

[30] *Forman v. CentrifyHealth*, 2019 WL 1810947, at *7 (Del. Ch. Apr. 25, 2019); *see also Brown v. Court Square Cap. Mgmt., L.P.*, 2022 WL 841138, at *3 (Del. Ch. Mar. 22, 2022).

[31] *CentrifyHealth*, 2019 WL 1810947, at *7 (quoting *Whittington v. Dragon Gp. L.L.C.*, 2009 WL 1743640, at *9 (Del. Ch. June 11, 2009)).

[32] *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

communicated with its stockholders as required by federal law.[33]  The Company provided a proxy statement to stockholders in advance of each annual meeting, held in the fall of each year.[34]  And for the past "eight years, [Lam] has been paying a dividend which [Turner] has not received."[35]  In fact, according to Defendant, the Company has paid quarterly dividends for the past eleven years.[36]

A person of "ordinary intelligence and prudence" would expect to receive communications (and dividends, if applicable) from the public company in which the person holds stock.  Failure to receive this information (and dividends) would have put a reasonable stockholder on "inquiry which, if pursued, would lead to the discovery" that his stockholder status was in question.[37]

This court's decision in *Eluv Holdings (BVI) Ltd. v. Dotomi* is instructive.[38]  There, the plaintiffs alleged that they exercised a stock option through an entity they owned in 2004.  But in the years that followed, they "received no shareholder reports,

---

[33] Def.'s Opening Br. at 9–10; *see* Hr'g Tr. at 30:13–31:10.  On a motion to dismiss, "the trial court may [] take judicial notice of matters that are not subject to reasonable dispute," including public disclosures.  *See In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169–70 (Del. 2006).

[34] Def.'s Opening Br. at 10.

[35] Compl. ¶ 45.

[36] Def.'s Opening Br. at 3–4.

[37] *Eluv Hldgs. (BVI) Ltd. v. Dotomi, LLC*, 2013 WL 1200273, at *7 (Del. Ch. Mar. 26, 2013) (quoting *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004)).

[38] 2013 WL 1200273 (Del. Ch. Mar. 26, 2013).

financial statements, or notices regarding shareholder meetings."[39]  In 2011, the plaintiffs learned that the defendant was about to engage in a merger and "inquired as to compensation they would receive for shares they believed they own."[40]  The defendant denied that the plaintiffs were stockholders, and the plaintiffs filed suit. The court dismissed the case as time-barred, concluding that "[n]ot receiving documents of this sort should have alerted a reasonable investor to the fact that [the company] did not consider [the plaintiffs' entity] a shareholder."[41]

*Saunders v. Lightwave Logic, Inc.* is similar.[42]  There, the plaintiff challenged the escheatment of his stock.  The Delaware Superior Court deemed the plaintiff's claims time-barred because the plaintiff failed to check on the status of his stock or communicate in any way with the company for eight years.  The court noted that the plaintiff did not provide notice to the company of his change in address after he purchased stock, and that "discovery of the injury was, at most, a phone call or mouse click away."[43]  The court concluded that these circumstances placed the plaintiff on inquiry notice.

---

[39] *Id.* at *10.

[40] *Id.* at *1.

[41] *Id.* at *10.

[42] 2024 WL 4512227 (Del. Super. Ct. Oct. 17, 2024).

[43] *Id.* at *10.

So too here.  Turner's failure to receive stockholder information placed him on inquiry notice that the Company did not consider him to be a stockholder, as in *Eluv*.[44] Turner's failure to inform the Company of his changes in address or perform reasonable diligence after receiving the stock certificate inures to his detriment, and Turner's status as a stockholder too "was, at most, a phone call or mouse click away," as in *Saunders*.[45]

Laches requires that the defendant show prejudice.  But when claims could have been filed within the appropriate timeframe but were not, the court presumes that the defendant is prejudiced.[46]   As the Supreme Court has held, the doctrine of laches protects against "the difficulty of doing entire justice, when the original transactions have become obscure by time, and the evidence may be lost, or depends on the precarious memory of witnesses."[47]  Plaintiff's claims implicate actions that

---

[44] Plaintiff endeavors to distinguish *Eluv* on the grounds that *Eluv* involved stock options and Turner held fully vested shares.  Hr'g Tr. at 23:17–24:10.  But the facts on which the court in *Eluv* based its holding regarding inquiry notice—for example, not receiving documents or communications—did not rest on that distinction and thus does not aid Plaintiff here.

[45] *Saunders*, 2024 WL 4512227, at *10; *see also Akrout v. Jarkoy*, 2018 WL 3361401, at *8 (Del. Ch. July 10, 2018) (applying laches where the plaintiff delayed pursuit of his claim for dividends for nine years).

[46] *See Baier v. Upper N.Y. Inv. Co. LLC*, 2018 WL 1791996, at *12 (Del. Ch. Apr. 16, 2018) (quoting *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013)) ("After the statute of limitations has run, defendants are entitled to repose and are exposed to prejudice as a matter of law by a suit by a late-filing plaintiff who had a fair opportunity to file within the limitations period.").

[47] *Hudak v. Procek*, 806 A.2d 140, 159 (Del. 2002) (Holland, J., dissenting) (quoting *Hudson v. Layton*, 5 Del. (5. Harr.) 74, at *13 (Del. June 1, 1848)); *see also Clymer v. DeGirolano*, 2023 WL 4613036, at *17 (Del. Ch. July 5, 2023) (finding "the type of prejudice laches was meant to ward against" where witnesses had passed away and

may have taken place 30 years ago.[48]  Even if the court did not presume prejudice, the duration of time passed renders it evident here.[49]

## III.    CONCLUSION

The Company's motion to dismiss is granted.  As a result, Plaintiff is out approximately $25 million worth of stock.  That, admittedly, is a difficult outcome to come to terms with.  But if the doctrine of laches does not operate to bar claims in this circumstance, it is hard to understand when it would.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

"memories of those who survived faded" and stating that the court should not fill those gaps).

[48] *See Senese v. Climatemp, Inc.*, 682 N.E.2d 266, 273 (Ill. App. Ct. 1997).

[49] Before filing this suit, Turner filed three substantially similar suits in the U.S. District Courts for the Northern District of Illinois, the Western District of Texas, and the District of Delaware.  *Turner v. Computershare, Inc., et al.*, 1:22-cv-00810 (N.D. Ill.); *Turner et al. v. Lam Research Corporation*, 1:22-cv-01237, (W.D. Tex.); *Turner et al. v. Lam Research Corporation*, 1:23-cv-00435, (D. Del.).  Each was dismissed by the respective courts on jurisdiction or *forum non conveniens* grounds.  Compl. ¶ 32(a)–(c); *see also id.*, Ex. E § 8.13 (specifying that the Delaware Court of Chancery is the sole and exclusive forum for actions asserting fiduciary breach or pursuant to any provision of the DGCL or the Company's bylaws).  These prior filings do not alter the laches analysis.  Even if Turner had filed in this court first, his claims would be time-barred.